IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| MICHAEL STOKES, | ) Case No. 1:22-cv-973 |
| | ) |
| Plaintiff, | ) |
| | ) MAGISTRATE JUDGE |
| v. | ) THOMAS M. PARKER |
| | ) |
| BRINOR, INC., | ) |
| *doing business as* | ) **MEMORANDUM OPINION** |
| LEATHER STALLION SALOON | ) **AND ORDER** |
| | ) |
| Defendant. | |

This is a copyright-infringement action commenced by plaintiff Michael Stokes against defendant Brinor, Inc. ("Brinor"), which does business as Leather Stallion Saloon ("LSS"), because Brinor displayed on LSS's Facebook page a flyer containing an altered version of a photograph over which Stokes owns a copyright. The parties have cross-moved for summary judgment on the issues of liability and damages. ECF Doc. 17; ECF Doc. 18.

For the reasons that follow, each motion is GRANTED IN PART and DENIED IN PART.

**I.    Procedural History**

On June 7, 2022, Stokes filed a complaint against Brinor, asserting a single claim of copyright infringement under the Copyright Act, 17 U.S.C. §§ 106, 501. ECF Doc. 1. The complaint alleged that Brinor reproduced and displayed a copyrighted photograph, which Stokes authored, on LSS's Facebook page without license or permission. *See* ECF Doc. 1 at 3, 6–7. As relief, the complaint sought: (i) the greater of either actual or statutory damages; (ii) an

injunction against infringing use of Stokes's "works"; (iii) costs and reasonable attorney fees; and (iv) pre-judgment interest. ECF Doc. 1 at 8.

On August 3, 2022, Brinor filed its answer. ECF Doc. 7. The answer asserted various affirmative defenses, including that Stokes's complaint was time-barred and that a third party was responsible for any damages incurred. *See* ECF Doc. 7 at 3–4. The parties subsequently consented to magistrate judge jurisdiction. ECF Doc. 11.

On March 20, 2023, Stokes filed a motion for summary judgment on the issues of liability and damages, pursuing only statutory damages. ECF Doc. 17. Brinor cross-moved for summary judgment on the same issues, including on the issue of actual damages. ECF Doc. 18. The parties filed opposition briefs to the other's motion, in which Stokes emphasized he "is seeking an award of statutory damages only." ECF Doc. 20; ECF Doc. 21; *see* ECF Doc. 20 at 19. And on May 3, 2023, Stokes filed a reply brief in support of his motion for summary judgment.[1] ECF Doc. 22.

## II.     Facts and Evidence[2]

Stokes is a California-based professional photographer. ECF Doc. 17-3 at 1 (declaration of Stokes). His work often features nude and semi-nude models, which he compiles into books. *Id.* at 2–3. Among his works is a September 22, 2014 photograph of model Bryant Wood in baseball paraphernalia:

---

[1] Stokes's reply brief was filed without leave of court, as required by the Case Management Order. ECF Doc. 13 at 2. Despite the violation, the court has considered Stokes's reply brief in reaching its decision.
[2] The facts recited in this section are undisputed or established by Rule 56 evidence.



ECF Doc. 1-1 (original photograph); ECF Doc. 17-3 at 4. Stokes registered the photograph with the U.S. Copyright Office on September 24, 2014, under Registration No. VAu 1-185-837. ECF Doc. 17-3 at 4; *see* ECF Doc. 17-4 at 2 (certificate of registration).

LSS is an Ohio pub that caters to and supports Cleveland, Ohio's gay community. ECF Doc. 18-2 at 1 (declaration of Kenneth Myers, Jr.); ECF Doc. 18-3 at 1 (declaration of Michael Dominguez). This includes sponsoring local sports teams and hosting special events during the weekend of Pride, an annual celebration of the LGBTQ community. ECF Doc. 18-1 at 1; ECF Doc. 18-2 at 1. And LSS promotes the events it hosts on its Facebook page. ECF Doc. 18-3 at 2.

In 2016, LSS agreed to hold a fundraiser for the benefit of an amateur men's softball team known as the "Cleveland Mustangs" over the weekend of that year's Pride (the 13th and 14th of August) weekend. ECF Doc. 18-2 at 1–2; ECF Doc. 18-3 at 2. David Sulik, a graphic designer, created a flyer to promote the event.[3] ECF Doc. 18-2 at 2; ECF Doc. 18-3 at 2. Sulik

---

[3] The sworn declarations submitted by Brinor both assert that Sulik was "asked" to make a flyer promoting the fundraiser without any indication by whom. *See generally* ECF Doc. 18-2; ECF Doc. 18-3.

3

then sent the flyer to LSS's then-manager, Michael Dominguez, who, on August 9, 2016, published it on LSS's Facebook page:



ECF Doc. 1-2 (Facebook post); ECF Doc. 18-2 at 2; ECF Doc. ECF Doc. 18-3 at 2. LSS's only input in the creation of the flyer was in providing information relevant to the actual fundraiser (i.e., date, time of year, prizes, and the sale of gummy bear shots). ECF Doc. 18-3 at 2.

During the fundraiser, members of the Cleveland Mustangs raised funds by selling gelatin and gummy bear shots. ECF Doc. 18-2 at 3. According to Brinor's owner, Kenneth Myers, Jr.: (i) third-party fundraiser sales equated to a loss in alcohol sales for LSS; (ii) LSS did not "make any funds from the 2016 Cleveland Mustangs fundraiser;" and (iii) LSS "most likely lost money" by allowing the fundraiser. ECF Doc. 18-2 at 2–3. And according to Dominguez, the gross receipts on the Sunday of 2016's Pride weekend ($2,491.50) were the lowest since 2013 ($2,588.75). ECF Doc. 18-3 at 2–3.

On March 27, 2022, Stokes came across LSS's Facebook page, and the August 9, 2016 post promoting the fundraiser. ECF Doc. 17-3 at 4–5. Stokes recognized the image of the baseball player on the flyer as the September 2014 photograph of Wood. *Id.* However, Stokes never granted LSS a license or permission to use the photograph. ECF Doc. 17-3 at 5–7.

4

### III. Summary Judgment Standard

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of fact exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The moving party bears the initial burden of establishing the absence of a genuine dispute of fact, either by pointing to evidence so establishing or by pointing out an absence of evidence to support the nonmovant's case. Fed. R. Civ. P. 56(c)(1)(A)-(B); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324–25 (1986). The burden then shifts to the nonmovant to show that there is a genuine dispute of fact. *Anderson*, 477 U.S. at 248–50. To do so, the nonmovant may not rely on his pleadings; he must set forth "specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324. The relevant question at all times is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

In determining whether a genuine issue of fact exists, "the evidence is construed, and all reasonable inferences are drawn, in favor of the nonmoving party." *Burgess v. Fischer*, 735 F.3d 462, 471 (6th Cir. 2013). When, as here, both parties have moved for summary judgment, we "must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inference against the party whose motion is under consideration." *Craig v. Bridges Bros. Trucking LLC*, 823 F.3d 382, 387 (6th Cir. 2016). The Sixth Circuit has cautioned that summary judgment, particularly in favor of the defendant, should be "used sparingly" in copyright-infringement cases. *RJ Control Consultants, Inc. v. Multiject, LLC*, 981 F.3d 446, 453 (6th Cir. 2020) (internal quotation marks omitted).

A. **Statute of Limitations**

Brinor argues that it is entitled to judgment as a matter of law because Stokes's complaint is barred by the Copyright Act's three-year statute of limitations. *See* ECF Doc. 18-1 at 11–14. Although Sixth Circuit precedent has applied the "discovery rule" to copyright-infringement claims, Brinor argues that more recent Supreme Court precedent requires the application of the "occurrence rule," under which Stokes's complaint would be untimely.[4] ECF Doc. 18-1 at 12–13 (citing, *inter alia*, *Rotkiske v. Klemm*, 140 S. Ct. 355 (2019)). Stokes responds that *Rotkiske* is inapposite to the Copyright Act. *See* ECF Doc. 20 at 12–13, 15–18.

As an affirmative defense, the defendant carries the burden of showing that the statute of limitations period has expired, after which the burden shifts to the plaintiff to establish that an exception applies. *Henry v. Norfolk S. Ry. Co.*, 605 F. App'x 508, 510 (6th Cir. 2015). Civil claims under the Copyright Act must be brought "within three years after the claim accrued." 17 U.S.C. § 507(b). The established rule in the Sixth Circuit is that a copyright-infringement claim "accrues when a plaintiff knows of the potential violation or is chargeable with such knowledge." *Roger Miller Music, Inc. v. Sony/ATV Publ'g LLC*, 477 F.3d 383, 390 (6th Cir. 2007). This interpretation of the Copyright Act's statute of limitations, known as the "discovery rule," is the applicable accrual date in every jurisdiction to have addressed the issue. 6 William F. Patry, *Patry on Copyright* § 20:19 (2023) (collecting cases).

In *Rotkiske*, the Supreme Court considered whether the discovery rule applied to the Fair Debt Collection Practices Act's ("FDCPA") statute of limitations, which required claims to be brought "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d); 140 S. Ct. at 359–60. The Court prefaced its analysis by stating that interpreting limitations

---

[4] Brinor's damages-related argument are addressed in the "Damages" section below.

6

provisions should begin with and – if unambiguous – end with the statutory text. *Rotkiske*, 140 S. Ct. at 361. But when two plausible constructions of the limitations provision could apply, the Court stated that "we generally adopt the construction that starts the time limit running when the cause of action accrues because Congress legislates against the standard rule that the limitations period commences when the plaintiff has a complete and present cause of action." *Id.* at 361 (ellipsis omitted; internal quotation marks omitted). In the case of FDCPA, the Court held that the statute was clear that the limitations period began to run from "the date the alleged FDCPA violation actually happened." *Id.* And in rejecting plaintiff's argument that a discovery rule should nevertheless be applied, the Court criticized as a "bad wine of recent vintage" the concept of engrafting a discovery rule into an unambiguous limitations provision. *See id.* at 360–61 (internal quotation marks omitted).

After *Rotkiske*, there have been calls for the Sixth Circuit to revisit the accrual date applicable to claims under the Copyright Act. *See Garza v. Everly*, 59 F.4th 876, 885–87 (6th Cir. 2023) (Murphy, J., concurring); *Everly v. Everly*, 958 F.3d 442, 459–68 (6th Cir. 2020) (Murphy, J., concurring). To date, those calls remain unanswered. And district courts within this circuit have continued to apply the discovery rule. *E.g.*, *Buell v. Sneaker Bar Det., LLC*, No. 22-10185, 2022 U.S. Dist. LEXIS 199585, at *4 (E.D. Mich. Nov. 2, 2022); *Brunson v. Capitol CMG, Inc.*, No. 3:20-cv-01056, 2022 U.S. Dist. LEXIS 153033, at *7–11 (M.D. Tenn. Aug. 25, 2022); *Navarro v. P&G*, 515 F. Supp.3d 718, 757–60 (S.D. Ohio 2021).

The court disagrees with Brinor that *Rotkiske* displaced application of the discovery rule to copyright-infringement claims. First, *Rotkiske* did not interpret the Copyright Act's statute of limitations. Second, the text of the Copyright Act's statute of limitations differs from that of the FDCPA. *Compare* 15 U.S.C. § 1692k(d), *with* 17 U.S.C. § 507(b). And third, Brinor overreads

7

*Rotkiske*, because, although the Court stated that the general approach to an ambiguous limitations provision with two plausible constructions was to adopt the date of occurrence, the Court did not foreclose the possibility that the only plausible construction of an ambiguous statute of limitations might be the discovery rule. *See Rotkiske*, 140 S. Ct. at 360; *see also Martinelli v. Hearst Newspapers, L.L.C.*, 65 F.4th Cir. 231, 241–42 (5th Cir. 2023).

All told, we must apply the discovery rule to Stokes's copyright-infringement claim. *See First Am. Title Co. v. Devaugh*, 480 F.3d 438, 457 (6th Cir. 2007) ("[T]o the extent that a Sixth Circuit decision allegedly conflicts with a Supreme Court decision, the district court is obligated to follow the Supreme Court decision."). But other than arguing for the application of the occurrence rule, Brinor has not attempted to argue in what way Stokes's claim would be untimely under the discovery rule. Brinor also has not put forward evidence of some event or series events that would have given Stokes any reason to investigate Brinor's Facebook page or fundraising activities earlier than when he claims to have come upon the page in March 2022. *See Design Basics, LLC v. Forrester Wehrle* Homes*, Inc.*, 305 F. Supp.3d 788, 794–95 (N.D. Ohio 2018). As the party with the burden, these are fatal to Brinor's request for judgment as a matter of law on the issue of statute of limitations. *See Henry*, 605 F. App'x at 510.

Brinor's motion for summary judgment must be DENIED IN PART with respect to its statute of limitations defense.

**B.    Liability**

Stokes argues that judgment as a matter of law in his favor is warranted on the issue of liability, because there is no material dispute of fact as to whether he owns a valid copyright in the photograph of Wood or that Brinor copied the photograph. *See* ECF Doc. 17-1 at 11–15. Without addressing the ownership of a valid copyright, Brinor argues that a genuine dispute of

8

fact exists as to *who* infringed upon Stokes's copyright, because the flyer was created by a third-party over whom Brinor had no authority or control. ECF Doc. 21 at 5–6. And Stokes replies that Brinor would nevertheless be liable, either for posting the flyer on its Facebook or for Sulik's actions on Brinor's behalf. *See* ECF Doc. 22 at 7–8.

The Copyright Act grants certain exclusive rights to the owner of a copyright, including the right to make copies, prepare derivative works, and publicly display the copyrighted work. 17 U.S.C. § 106(1)-(2), (5). Anyone who violates any of these rights is an "infringer" liable to the copyright owner for damages. 17 U.S.C. §§ 501(a), 504(a). Two elements are necessary to establish liability for copyright infringement: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). "The first prong tests the originality and non-functionality of the work, both of which are presumptively established by the copyright registration. The second prong tests whether any copying occurred (as a factual mater) and whether the portion of the work copied were entitled to copyright protection (as a legal matter)." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 534 (6th Cir. 2004).

### 1. Ownership of a Valid Copyright

Stokes has established the first element of his copyright-infringement claim as a matter of law. Stokes asserts that he registered the photograph of Wood with the U.S. Copyright Office under Registration No. VAu 1-185-837. ECF Doc. 17-3 at 4. He has submitted a Certificate of Registration, granting Stokes a copyright over a work titled "Photographs 2014." ECF Doc. 17-4 at 2. And the certificate date of the copyright (September 24, 2014) makes it presumptively valid. 17 U.S.C. § 410(c). Although the certificate does not specifically describe the Wood photograph, the undisputed record evidence before the court (the photograph, the registration

number, the certificate, and Stokes's unrefuted sworn statements) is sufficient to tie the two together. *Cf. Rosen v. R & R. Auction Co., LLC*, No. CV 15-07950, 2016 U.S. Dist. LEXIS 187610, at *11 (C.D. Cal. Aug. 31, 2016). Brinor has not attempted to rebut the presumption created by a copyright registration. Thus, the first element is conclusively established.

  **2. Copying**

Unlawful copying of copyrighted material can be established through direct or indirect evidence. *Enchant Christmas Light Maze & Mkt. v. Glowco, LLC*, 958 F.3d 532, 536 (6th Cir. 2020). Direct evidence includes "party admissions, witness accounts of the physical act of copying, and common errors in the works of plaintiffs and the defendants." *Id.* (internal quotation marks omitted). Absent such evidence, the plaintiff "may establish an inference of copying by showing: (1) access to the allegedly infringed work by the defendant(s) and (2) a substantial similarity between the two works at issue." *Id.* (internal quotation marks omitted).

"Access is essentially hearing or having a reasonable opportunity to view the plaintiff's work and thus having the opportunity to copy." *Stromback v. New Line Cinema*, 384 F.3d 283, 293 (6th 2004) (alterations omitted; internal quotation marks omitted). "A lesser showing of access (or even no showing at all) will suffice where the works are strikingly similar, strongly suggesting that copying occurred." *Jones v. Blige*, 558 F.3d 485, 491 (6th Cir. 2009) (alteration omitted; internal quotation marks omitted). The latter course requires such striking similarity so as to "preclude the possibility of independent creation." *Murray Hill Publ'ns, Inc. v. Twentieth Century Fox Film Corp.*, 361 F.3d 312, 317 (6th Cir. 2004).

Determining substantial similarity involves two steps. We must first identify which aspects of plaintiff's work are protectible by copyright; and, second, determine whether there are aspects of the infringing work that are substantially similar to the protectible elements of the

10

plaintiff's work. *Enchant Christmas Light Maze & Mkt.*, 958 F.3d at 537. What the Copyright Act protects are creative tangible expressions of an author's originality. *Id.* Nearly all works possess some creative spark. *Feist Publ'ns, Inc.*, 499 U.S. at 345. And "[o]riginality in a photograph may be manifested in the posing of subjects, lighting angle, selection of film and camera, evoking the desired expression, and almost any other variant involved." *Fournier v. McCann*, 202 F. Supp.2d 290, 295 (S.D. N.Y. 2002) (internal quotation marks omitted).

Stokes has also established the second element of his copyright-infringement claim as a matter of law, albeit not on every argument presented. Stokes's motion for summary judgment relies on an indirect-evidence theory on the copying element of his claim. *See* ECF Doc. 17-1 at 12–13. He argues that Brinor's access is undisputed, because Brinor admitted that the Wood photograph was readily available on the internet. ECF Doc. 17-1 at 13; ECF Doc. 22 at 7. However, Brinor's admissions pertain only to the *current* accessibility of the photographs. ECF Doc. 17-7 at 13 (interrogatory answer stating, "the image is currently available on the internet from several sources"); ECF Doc. 18-2 at 3 (discussing the online availability of the photograph in February 2023). No Rule 56 evidence has been presented regarding whether the Wood photograph was available on the internet on or before August 2016.

Stokes alternatively argues that the similarity between the Wood photograph and the flyer is so striking as to establish access. ECF Doc. 22 at 7–8. That argument has legs. Although Wood's likeness is not protectible, several other features of his photograph are. *See* Melville B. Nimmer & David Nimmer, *1 Nimmer on Copyright* § 1.17 ("The name and likeness [of a person] do not become works of authorship simply because they are embodied in a copyrightable form, such as a photograph."). Protectible elements would include Wood's posing, the strategic selection and placement of baseball paraphernalia (i.e., the cap, glove, jersey, umpire leg guards,

11

and baseball shoes), the angle, and the lighting on the photograph, all of which combine to form a particular "concept of feel." *Fournier*, 202 F. Supp.2d at 295 (internal quotation marks omitted).

That brings us to the necessary comparison between Stokes's original photograph of wood and the allegedly infringing flyer:

 

*See* ECF Doc. 1-1; ECF Doc. 1-2.[5] The perceptible differences between the two are that: (i) the flyer is mirrored version of the original; (ii) the hue of Wood's skin in the flyer is paler than the original; (iii) the red color of the baseball cap and jersey and shin guards has been switched to green; and (iv) the baseball jersey in the flyer has no letter embroidery. However, the protectible characteristics of the original remain in place; "[t]he ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal to be the same." *Folio Impressions, Inc. v. Byer California*, 937 F.2d 759, 765 (2d Cir. 1991). What's more, the court finds that a rational trier of fact would be left with no conclusion other than that

---

[5] To facilitate comparison, the images displayed on this page are court-cropped versions of the exhibits on the docket.

the Wood image depicted in the flyer is but a copy of the original. *See Murray Hill Publ'ns, Inc.*, 361 F.3d at 325.

Brinor has not argued against these conclusions; rather, it argues that it was Sulik (not Brinor) who copied the Wood photograph. ECF Doc. 21 at 5–6. Although the argument has some merit, it is insufficient to defeat summary judgment. Liability for direct infringement (the sole claim Stokes has alleged) requires "volitional conduct" by the alleged infringer. *Average Joe's Entm't Grp., LLC v. Soundcloud, LTD.*, No. 3:16-cv-3294, 2018 U.S. Dist. LEXIS 225151, at *6–7 (M.D. Tenn. Oct. 17, 2018) (internal quotation marks omitted). Stated differently, "direct liability attaches only to the person who actually presses the button." *Abko Music, Inc. v. Sagan*, 50 F.4th 309, 321 (2d Cir. 2022) (internal quotation marks omitted). Here, the undisputed Rule 56 evidence before the court points to Sulik as the only person directly responsible for creating the infringing flyer. And although Stokes argues he could nevertheless succeed on a secondary theory of liability, that is not what he pleaded in his complaint. *See* ECF Doc. 22 at 8; *see generally* ECF Doc. 1.[6]

However, an actionable "copying" requires only that Brinor violated *one* of Stokes's rights under the Copyright Act. *Best Hand Entm't LLC v. Wideawake-Deathrow Entm't, LLC*, No. 12-cv-12786, 2014 U.S. Dist. LEXIS 43719, at *15 (E.D. Mich. Mar. 31, 2014) ("The term "copying" means infringement of any of a copyright holder's exclusive rights under 17 U.S.C. § 106."). Sulik's conduct would relate to the infringement of Stokes's right to reproduce the Wood photograph. *See* 17 U.S.C. § 106(1)-(2). But it would not affect Brinor's liability for publicly displaying the infringing work via Dominguez's act of posting the flyer on LSS's

---

[6] Moreover, Stokes's secondary theory of liability also would not warrant entry of judgment as a matter of law, because no Rule 56 evidence has been presented establishing Brinor's right and ability to supervise Sulik's conduct. *See Gordon v. Nextel Communs.*, 345 F.3d 922, 925 (6th Cir. 2003) (discussing the elements of vicarious liability).

13

Facebook page. 17 U.S.C. § 106(5); ECF Doc. 18-3 at 2. Although Myers and Dominguez disclaim any knowledge of the copyright infringing nature of the flyer, as a strict liability offense, lack of knowledge is no defense. *E.g.*, *Microsoft Corp. v. Compusource Distribs., Inc.*, 115 F. Supp.2d 800, 805 (E.D. Mich. 2000); *King Records, Inc. v. Bennett*, 438 F. Supp.2d 812, 852 (M.D. Tenn. 2006); ECF Doc. 18-2 at 2; ECF Doc. 18-3 at 2

Stokes's motion for summary judgment is GRANTED IN PART on the issue of liability for direct copyright infringement for publicly displaying the Wood photograph.

**C.     Actual Damages**

Brinor separately moves for summary judgment on the issue of actual damages. Brinor argues that Stokes cannot recover for actual damages beyond the three-year "lookback" period provided by the Copyright Act. ECF Doc. 18-1 at 14–15. Brinor argues that Stokes also cannot recover profit-based damages, because Stokes has not presented evidence attributing any of Brinor's profits to the infringement. ECF Doc. 18-1 at 15–20. And Brinor argues that Stokes cannot obtain from Brinor profits that may have been earned by a non-defendant (the Cleveland Mustangs). ECF Doc. 18-1 at 20–21.

Stokes has declined to respond to Brinor's arguments, noting that he has elected to pursue statutory damages in lieu of actual damages. *See* ECF Doc. 20 at 18–19.

The Copyright Act gives copyright owners the choice of recovering either "actual damages and any additional profits of the infringer" or statutory damages. 17 U.S.C. § 504(a). This choice can be made at any time before judgment is entered. 17 U.S.C. § 504(c)(1). But once the plaintiff has elected to pursue statutory damages, he "cannot thereafter unelect them." *Patry on Copyright* § 22:171.

14

Stokes has informed the court by way of his motion for summary judgment that he has elected to pursue statutory damages in lieu of actual damages. *See* ECF Doc. 17-1 at 15–18; ECF Doc. 17-3 at 7; ECF Doc. 20 at 18–19; Patry on Copyright § 22:171 ("Plaintiff may elect by filing a summary judgment motion on damages that seeks only one form of recovery."). Brinor's motion for summary judgment is therefore DENIED IN PART as moot with respect to the issue of actual and profit-based damages. *See* Patry on Copyright § 22:171; *see also Home Design Servs. v. Eber*, No. 3:08cv257, 2009 U.S. Dist. LEXIS 81563, at *12 (N.D. Fla. July 10, 2009), *report and recommendation adopted*, 2009 U.S. Dist. LEXIS 81558 (N.D. Fla. Sept. 8, 2009).

### D. Statutory Damages

Both parties have moved for summary judgment on the issue of statutory damages. Stokes argues that statutory damages should be determined from a starting point of $11,000, representing what a reasonable licensing value for the Wood photograph would have been based on an estimate from Getty Images for the licensing of a professional photograph of Wood. ECF Doc. 17-1 at 17–18. Stokes further argues that Brinor's conduct was willful, warranting an award of at least $33,000. ECF Doc. 17-1 at 18.

Brinor responds that Stokes's proposed valuation of the Wood photograph is speculative. ECF Doc. 21 at 8–10. Brinor also disputes Stokes's characterization of its conduct as willful, arguing that it was instead an innocent infringer and only nominal damages should therefore be awarded. ECF Doc. 18-1 at 21–24; ECF Doc. 21 at 9–10. Brinor further argues that Stokes cannot recover statutory damages or attorney fees because he did not register his copyright until "April 28, 2020." ECF Doc. 18-1 at 24–26.

15

In his reply and opposition briefs, Stokes argues that Brinor has failed to meet its burden of showing that it was an innocent infringer. ECF Doc. 20 at 22–23; ECF Doc. 22 at 12–14. He further argues that he is entitled to costs, including attorney fees. ECF Doc. 20 at 19–21.

### 1.     **Availability of Damages**

Statutory damages, costs, and attorney fees are all remedies available for copyright infringement. 17 U.S.C. §§ 504-505. However, they are not available for:

> (1) any infringement of copyright in an unpublished work before the effective date of its registration; or
>
> (2) any infringement of copyright commenced after the first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work.

17 U.S.C. § 412.

Brinor's timeliness argument rests, in part, on a mistake of fact regarding the date on which Stokes registered his copyright on the Wood photograph. The undisputed Rule 56 evidence before the court indicates that September 24, 2014 was the date when the photograph was registered and the effective date of registration. ECF Doc. 17-3 at 4; ECF Doc. 17-4 at 2. Thus, § 412 does not preclude the availability of statutory damages, costs, or attorney fees.

That said, it is necessary to discuss the extent to which relief is available. As part of his statute of limitations argument, Brinor separately argues that *Petrella v. MGM*, 572 U.S. 663 (2014), limits the scope of available statutory damages to harm which accrued within three years of the date of filing. *See* ECF Doc. 18-1 at 12–14. There, the Court considered whether laches would bar relief on an otherwise timely copyright-infringement claim, holding that it would not. *Petrella*, 572 U.S. at 668. In so ruling, the Court made several statements which have created confusion over the scope of available relief. *Patry on Copyright* § 20:24. The Court stated, "it is undisputed [that § 507(b)] bars relief of any kind for conduct occurring prior to the three-year

16

limitations period." *Petrella*, 572 U.S. at 667. The Court further stated the limitations provision "allows plaintiffs . . . to gain retrospective relief running only three years back from the date the complaint was filed." *Id.* at 672. And the Court stated, "No recovery may be had for infringement in earlier years. Profits made in those years remain the defendant's to keep." *Id.* at 677.

The Sixth Circuit has not addressed what impact *Petrella* had on the scope of relief available for copyright infringement. Courts within this district have arrived at different conclusions. *Compare Navarro*, 515 F. Supp.3d at 762 (holding that *Petrella* limited plaintiff's actual damages to those which arose during the three years before filing suit), *with Design Basics, LLC*, 305 F. Supp.3d at 794 n.2 (rejecting the argument that that a plaintiff would be foreclosed from recovering for infringements which occurred more than three years from the date of filing), *and Mitchell v. Capitol Records, LLC*, 287 F. Supp.3d 673, 677–78 (W.D. Ky. 2017) (holding that *Petrella* applies only to damages arising from claims which "accrued" during the limitations period). And the circuit courts to have addressed the issue have come out differently. *Compare Sohm v. Scholastic Inc.*, 959 F.3d 39, 52 (2d Cir. 2020) (holding that *Petrella* limits damages to those "incurred during the three years prior to filing suit"), *with Stars Ent., LLC v. MGM Domestic Television Dist., LLC*, 39 F.4th 1236, 1246 (9th Cir. 2022) (holding that "[n]either the text of the Copyright Act nor *Petrella* imposes a three-year damages bar in a discovery rule case"), *and Nealy v. Warner Chappell Music, Inc.*, 60 F.4th 1325, 1331 (11th Cir. 2023) (agreeing with the Ninth Circuit).

In light of the lack of binding precedent on the matter, the court declines to read *Petrella* as affecting the availability of statutory damages. *See* 3 Nimmer on Copyright § 12.05(B)(2)(c)(iii) (stating that statutory damages fall outside of *Petrella*'s limitation on

17

retrospective recovery).  Brinor's motion for summary judgment is therefore DENIED IN PART with respect to the availability of statutory damages, costs, and attorney fees.

### 2.     Appropriate Range of Statutory Damages

When a plaintiff elects to recover statutory damages, the court[7] may award "a sum of not less than $750 or more than $30,000."  17 U.S.C. § 504(c)(1).  If the preponderance of the evidence establishes that the defendant's conduct was willful, "the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000."  17 U.S.C. § 504(c)(2).  Conduct is "willful" if it was done with either (i) knowledge that the conduct constituted copyright infringement or (ii) a reckless disregard for the copyright holder's property interest.  *Capitani v. World of Miniature Bears, Inc.*, 552 F. Supp.3d 781, 799 (M.D. Tenn. 2021).  But if the defendant proves that it "was not aware and had no reason to believe that his or her acts constituted an infringement of copyright, the court in its discretion may reduce the award of statutory damages to a sum of not less than $200."  17 U.S.C. § 504(c)(2).  Because willfulness and innocence both implicate a party's mental state, they are generally not appropriate for summary judgment.  See *Patry on Copyright* § 22:183

The court finds that a genuine dispute of fact exists as to whether Brinor acted willfully.  Stokes has presented no evidence that Brinor, Myers, or Dominguez actually knew that posting the flyer on its Facebook page infringed on his copyright over the Wood photograph.  Nor has Stokes presented evidence, such as a letter or legal notice, informing Brinor of Stokes's copyright after discovery or that Brinor has a history of committing copyright infringement.  *See Calibrated Success, Inc. v. Charters*, 72 F. Supp.3d 763, 776 (E.D. Mich. 2014).

---

[7] Although the statute uses the term "court," both either the court or a jury can determine the amount of statutory damages.  *Virtual Studios, Inc. v. Hagaman Indus.*, 984 F. Supp.2d 830, 840 (E.D. Tenn. 2013).

18

Stokes nevertheless argues that the evidence establishes recklessness, because Brinor "admitted that it found [his] photograph and posted [the photograph] to its Facebook page" knowing that Brinor didn't create the photograph. ECF Doc. 17-1 at 15; ECF Doc. 20 at 23–24; ECF Doc. 22 at 13–14.  However, Brinor did not admit to posting Stokes's photograph; rather, it admitted to posting a flyer it received from a third-party over whom it had no control that happened to contain a copyright-infringing image. ECF Doc. 18-2 at 2; ECF Doc. 18-3 at 2.  No evidence has been presented to controvert that statement.  That Brinor knew *it* wasn't the creator is of no moment; a jury could just as easily find that it reasonably believed that the flyer was non-infringing or that Sulik owned the copyright.  By extension, a genuine dispute of fact would also exist as to whether Brinor had *no* reason to believe that its conduct constituted copyright infringement.  *Cf. Philpot v. Toledo Radio, LLC*, No. 3:15CV1401, 2016 U.S. Dist. LEXIS 128872, at *4–5 (N.D. Ohio Sept. 21, 2016); *Virtual Studios, Inc. v. Hagaman Indus.*, 984 F. Supp.2d 830, 840 (E.D. Tenn. 2013).

Both motions for summary judgment must be DENIED IN PART with respect to the amount of damages.[8]

---

[8] In light of the factual dispute concerning the issues of willful and innocent infringement, the court declines to consider the parties' arguments concerning the fair market value of the Wood photograph and Stokes's alleged "Copyright Trolling."

### IV. Conclusion

In summary, Stokes's motion for summary judgment (ECF Doc. 17) is GRANTED with respect to the issue of liability for unlawful display but DENIED in all other respects. Brinor's motion for summary judgment (ECF Doc. 18) is DENIED as MOOT with respect to the issue of actual and profit-based damages and otherwise DENIED in all other respects.

**IT IS SO ORDERED.**

Dated: July 18, 2023

Thomas M. Parker
United States Magistrate Judge